UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L<small>INDA</small> D<small>URBIN</small>,

  Plaintiff,          Hon. Hala Y. Jarbou

v.               Case No. 1:22-cv-270

C<small>OMMISSIONER OF</small>
S<small>OCIAL</small> S<small>ECURITY</small>,

  Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of Social Security appeals, the undersigned recommends that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v.*

*Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *Id.* at 224-25. Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff was 50 years of age on her alleged disability onset date and 53 years of age when her insured status expired. (ECF No. 7-5, 7-17, PageID.143, 1373). Plaintiff completed high school and worked previously in various capacities. (ECF No. 7-17, PageID.1392). Plaintiff applied for benefits on June 15, 2010, alleging that she had been disabled since January 15, 2010, due to left-sided hearing loss, "possible" epilepsy, poor balance, possible heart condition, major memory loss, dizzy spells, seizure activity, and loss of focus and ability to stay on task. (ECF No. 7-5, 7-6, PageID.143, 158).

Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). Following an administrative hearing, ALJ Timothy Keller, in an opinion dated May 11, 2012, determined that Plaintiff did not qualify for disability benefits. (ECF No. 7-2, 7-10, PageID.65-90, 622-35). This matter was ultimately remanded to the Commissioner by the United States District Court for the Southern District of Ohio. (ECF No. 7-10, PageID.648-67).

Following a second administrative hearing, ALJ Keller, in an opinion dated December 17, 2014, again determined that Plaintiff did not qualify for disability benefits. (PageID.573-88, 679-92). On November 27, 2015, the Appeals Council remanded this matter so that the ALJ could "address the evidence which was submitted to the Appeals Council" and issue a new decision. (PageID.701-03).

Following another administrative hearing, ALJ Jeffrey Hartranft, in an opinion dated September 21, 2016, determined that Plaintiff did not qualify for

disability benefits.  (ECF No. 7-9, PageID.501-72).  On May 27, 2020, this matter was again remanded to the Commissioner by the Southern District of Ohio.  (ECF No. 7-19, PageID.1532-62).

After conducting yet another administrative hearing, ALJ Hartranft, in an opinion dated December 29, 2021, determined that Plaintiff did not qualify for disability benefits.  (ECF No. 7-17, PageID.1372-1420).  Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on March 31, 2103.  (ECF No. 7-17, PageID.1373); *see also*, 42 U.S.C. § 423(c)(1).  Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status.  *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate she is entitled to disability benefits and she satisfies her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff, as of the expiration of her insured status, Plaintiff suffered from: (1) status post left vestibular artery vascular event; (2) degenerative changes and arthritis of the cervical, lumbar, and thoracic spine; (3) right rotator cuff tear; (4) left sensorineural hearing loss and tinnitus; (5) T6 compression fracture; (6) fibromyalgia; (7) anxiety disorder; and (8) adjustment disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (ECF No. 7-17, PageID.1375-82).

With respect to Plaintiff's residual functional capacity, the ALJ determined that as of the date her insured status expired, Plaintiff retained the ability to perform light work subject to the following limitations: (1) she can occasionally climb ramps or stairs, but can never climb ladders, ropes, or scaffolds; (2) she can occasionally stoop, kneel, crouch, and crawl; (3) she can occasionally reach overhead with her right upper extremity; (4) she must avoid workplace hazards such as unprotected heights and machinery; (5) she cannot perform commercial driving; (6) she is limited to work environments which are no louder than a typical office environment; (7) she is limited to simple, routine, and repetitive tasks involving only simple work related decisions with few, if any, workplace changes.   (ECF No. 7-17, PageID.1382).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, her limitations notwithstanding.  *O'Neal*, 799 Fed. Appx. at 316.   In satisfying this burden, the ALJ may rely on a vocational expert's testimony.   *Ibid*.

In this case, a vocational expert testified that there are approximately 176,000 jobs in the national economy which an individual with Plaintiff's RFC could perform. (ECF No. 7-17, PageID.1393).   This represents a significant number of jobs.  *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and

others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

## I.  Treating Physician Doctrine

On March 29, 2012, Dr. Caryn Theobald completed a questionnaire regarding Plaintiff's residual functional capacity. (ECF No. 7-8, PageID.478-82). The doctor reported that Plaintiff was more limited than the ALJ found. Specifically, the doctor reported that during an 8-hour workday, Plaintiff could: (1) stand for 2-3 hours; (2) walk for 2 hours; and (3) sit for 2-3 hours. (*Id*., PageID.478). The doctor reported that Plaintiff could lift up to 10 pounds but could only do so occasionally. (*Id*.). The doctor also reported that Plaintiff could "never" bend or crawl. (*Id*., PageID.479). The ALJ, however, afforded "little weight" to Dr. Theobald's opinions. (ECF No. 7-17, PageID.1389). Plaintiff argues that she is entitled to relief because the ALJ failed to articulate good reasons for affording less than controlling weight to the opinions of her treating physician.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent

with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Secretary of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citation omitted). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Ibid.* (citation omitted). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Ibid.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

The medical evidence reveals the following. On December 16, 2009, Plaintiff participated in an echocardiogram examination, the results of which were unremarkable. (ECF No. 7-7, PageID.404-05). On January 14, 2010, Plaintiff reported experiencing "left sudden sensorineural hearing loss and extreme vertigo." (*Id.*, PageID.343). On January 15, 2010, Plaintiff participated in a CT scan of her brain, the results of which revealed "no acute brain abnormality." (*Id.*, PageID.224).

Testing conducted on January 19, 2010, revealed "normal" hearing in Plaintiff's right ear, but "severe sensorineural hearing loss" in her left ear. (*Id.*, PageID.340). On January 22, 2010, Plaintiff participated in an MRI of her brain and internal auditory canals, the results of which were "unremarkable." (*Id.*,

PageID.336). On February 8, 2010, Plaintiff reported that her dizziness was "slowly improving." (*Id*., PageID.347).

On March 11, 2010, Plaintiff participated in an MRA examination of her head, the results of which revealed "no evidence of AV malformation, aneurysm or any specific vascular malformation to account for [Plaintiff's] symptoms." (*Id*., PageID.335). Specifically, the examining physician reported that he "do[es] not see an abnormal relationship between the carotid canal and the internal ear structures." (*Id*., PageID.335). Treatment notes dated March 17, 2010, indicate that Plaintiff was "doing quite well" and was cleared to return to work. (*Id*., PageID.348).

On March 31, 2010, Plaintiff was examined by a neurologist who postulated that Plaintiff's left-sided hearing loss was due to "a stroke or at least a vascular event of the left vestibular artery or left cochlea." (*Id*., PageID.228). The doctor instructed Plaintiff to "control the cholesterol and stop smoking forever." (*Id*.). The results of a physical examination were otherwise unremarkable. (*Id*., PageID.243). On April 5, 2010, Plaintiff participated in an electroencephalogram (EEG) examination, the results of which were "normal." (*Id*., PageID.221).

On May 14, 2010, Plaintiff returned to the neurologist. (*Id*., PageID.248-49). Plaintiff reported a "seizure at night while sleeping" approximately two weeks prior. (*Id*., PageID.248). The results of a neurological examination were "normal." (*Id*.). The doctor noted that Plaintiff "drinks alcohol daily (one to six beers for several years)." (*Id*.). The doctor was unsure if Plaintiff had experienced "an alcohol

-10-

withdrawal seizure," but nevertheless advised Plaintiff to "taper off" her alcohol use and "then to stop alcohol completely."  (*Id.*).

On May 18, 2010, Plaintiff participated in an EEG examination, the results of which were "within normal limits."  (*Id.*, PageID.257).  On June 16, 2010, Plaintiff participated in a "cardiac spect multi study," the results of which revealed: (1) "normal" ECG response to treadmill stress; (2) "normal" myocardial perfusion study with anterior soft tissue artifact; and (3) "normal" global left ventricular systolic function.  (*Id.*, PageID.290).

On June 9, 2010, Plaintiff reported that she "apparently" experienced a seizure recently.  (*Id.*, PageID.309).  The results of an examination were unremarkable, however.  (*Id.*, PageID.309-10).  The results of a June 21, 2010 physical examination were likewise unremarkable.  (*Id.*, PageID.311-13).

On August 6, 2010, Plaintiff was examined by Dr. Mark Loomus.  (ECF No. 7-8, PageID.425-28).  Plaintiff reported that she recently experienced a seizure.  (*Id.*, PageID.425).  A physical examination revealed "normal" heart rate and rhythm and "normal" respiratory rhythm and effort.  (*Id.*, PageID.427).  Plaintiff exhibited "normal" gait, motor strength, and muscle tone.  (*Id.*).  The results of a neurological examination were "normal" and Plaintiff exhibited "normal" coordination.  (*Id.*).

On August 11, 2010, Plaintiff participated in a psychological evaluation. (ECF No. 7-7, PageID.383-87).  Plaintiff reported that she was "unable to work because she has balance problems and is unable to lift heavy things."  (*Id.*, PageID.386).  The results of the examination were largely unremarkable.  Plaintiff

was diagnosed with adjustment disorder – unspecified and her GAF score was rated as 75.[1]  (*Id.*).

The examiner also made the following observations: (1) Plaintiff's "mental ability to relate to others, including fellow co-workers and supervisors is not impaired."; (2) Plaintiff's "mental ability to understand, remember, and follow instructions is not impaired"; (3) Plaintiff's "mental ability to maintain attention, concentration, persistence, and pace to perform repetitive tasks is weak but not impaired"; and (4) Plaintiff's "mental ability to withstand the stress and pressure associated with day to day work activity is mildly impaired."  (*Id.*, PageID.387).

An MRI of Plaintiff's thoracic spine, performed September 10, 2010, revealed "mild to moderate" scoliosis, but was otherwise "unremarkable."  (*Id.*, PageID.406). The results of an MRI of Plaintiff's lumbar spine, performed the same day, were "normal except for the [presence of a] Tarlov cyst" at S1 on the left.  (*Id.*).

Treatment notes dated October 7, 2010, indicate that Plaintiff was experiencing "extensive paraspinal tenderness."  (*Id.*, PageID.410-11).  Treatment notes dated October 22, 2010, indicate that Plaintiff was experiencing "extensive

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter DSM-IV).  A score of 75 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors; no more than slight impairment in social, occupational, or school functioning."  *Id.* at 34.

thoracic and lumbar paraspinal tenderness aggravated by range of motion, especially extension." (*Id.*, PageID.409).

On November 11, 2010, Plaintiff was examined by Dr. Loomus. (ECF No. 7-8, PageID.421-24). Plaintiff reported that she was experiencing dizziness. (*Id.*, PageID.421). A physical examination revealed "normal" heart rate and rhythm and "normal" respiratory rhythm and effort. (*Id.*, PageID.423). Plaintiff exhibited "normal" gait and motor strength and "intact" fine motor movement. (*Id.*). The results of a neurological examination were "normal" and Plaintiff exhibited "normal" coordination. (*Id.*).

On June 14, 2011, Plaintiff was examined by Dr. Salem Foad. (*Id.*, PageID.450-51). Plaintiff reported experiencing back, neck, and shoulder pain. (*Id.*, PageID.450). An examination revealed tenderness, but Plaintiff's shoulders "were not swollen, painful or limited in abduction and rotation." (*Id.*, PageID.451). Plaintiff's "neck was not limited in rotation." (*Id.*). X-rays of Plaintiff's spine revealed only "mild" degenerative changes. (*Id.*). Plaintiff also reported experiencing pain and swelling in her fingers, but an examination revealed no evidence of synovitis in her fingers, wrists, or elbows. (*Id.*). Plaintiff was diagnosed with fibromyalgia and "mild" osteoarthritis of the spine. (*Id.*). Plaintiff was instructed to perform stretching exercises. (*Id.*).

On November 29, 2011, Plaintiff was again examined by Dr. Foad. (*Id.*, PageID.447-48). An examination revealed the following:

> Tenderness in the right scapular area and medial scapular border. The shoulders are painful, but not swollen or limited. The neck is not limited in rotation. No swelling present in the fingers[,] wrists[, or] elbows. No rash. No muscle weakness.

(*Id.*, PageID.448).

On May 14, 2012, Plaintiff was again examined by Dr. Foad. (ECF No. 7-14, PageID.905). A physical examination revealed the following:

> Tinel [2] and Phalen [3] negative. There is no thenar atrophy. No synovitis in the fingers or wrists. Tenderness present in the lateral epicondyle area of the right elbow. There is no synovitis or nodules in the elbow joint. Range of motion is not limited. Shoulders and hips are not painful or limited in flexion, abduction, external or internal rotation. No swelling of the knees or ankles or toes. No rash. Tenderness and pain in the lower back at L5. Flexion of the lumbar spine to 70 [degrees]. Straight leg raising negative. No weakness in the legs. No rash. No oral ulcers. No muscle weakness.

(*Id.*).

Treatment notes authored by Dr. Foad on September 10, 2012, December 4, 2012, and February 25, 2013, indicated similar findings. (*Id.*, PageID.902-04).

---

[2] Tinel's sign assesses whether a person is experiencing nerve compression or nerve damage indicative of carpal tunnel syndrome. *See* Tinel's Sign, available at https://my.clevelandclinic.org/health/diagnostics/22662-tinels-sign (last visited on May 2, 2023).

[3] Phalen's test is used to diagnose carpal tunnel syndrome. *See* Carpal Tunnel Syndrome, available at https://my.clevelandclinic.org/health/diseases/4005-carpal-tunnel-syndrome (last visited on May 2, 2023).

The ALJ discounted Dr. Theobald's opinions because such were "inconsistent with the totality of the evidence." (ECF No. 7-17, PageID.1389). As the ALJ detailed in his opinion, the results of physical examinations and objective testing consistently contradicted Dr. Theobald's conclusions. For example, Plaintiff consistently exhibited good balance, coordination, motor strength, range of motion, and gait. Straight leg raising was negative. Phalen and Tinel testing were negative. The results of MRI, MRA, EEG, and CT examinations were all normal or unremarkable. As the ALJ concluded, the medical evidence revealed only "mild" findings which "does not reasonably support further restriction in the claimant's residual functional capacity." (*Id.*). In sum, the ALJ articulated good reasons, supported by substantial evidence for discounting Dr. Theobald's opinions. Accordingly, this argument is rejected.

## II. Assessment of Plaintiff's Impairments

Plaintiff next asserts that she is entitled to relief because the ALJ failed to find that her carpal tunnel syndrome constituted a severe impairment.

At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th

Cir. 1987); *Kirkland v. Commissioner of Social Security*, 528 Fed. Appx. 425, 427 (6th Cir., May 22, 2013) ("so long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments. . .does not constitute reversible error").

In support of her argument that she suffers from carpal tunnel syndrome, Plaintiff cites to the following items in the record. On March 10, 2010, Plaintiff was examined by Dr. Matthew Grothaus. (ECF No. 7-15, PageID.1303-06). While the doctor checked a box labeled "carpal tunnel syndrome," the doctor's treatment notes do not appear to support this "diagnosis." (*Id.*). Plaintiff next cites to a letter authored by Dr. Foad on June 14, 2011, in which the doctor relates that Plaintiff "was told on the basis of an EMG that she has mild carpal tunnel syndrome." (ECF No. 7-8, PageID.450). Finally, Plaintiff cites to Dr. Foad's observation that Plaintiff "may have carpal tunnel syndrome." (ECF No. 7-14, PageID.905, 907).

The ALJ determined that Plaintiff suffered from a severe impairment at step two of the sequential analysis and continued with the remaining steps thereof, considering in detail the medical evidence of record. The ALJ's conclusion that Plaintiff did not suffer from carpal tunnel syndrome is supported by substantial evidence as detailed above. On the other hand, the evidence cited by Plaintiff consists primarily of speculation and hearsay. Granted, Dr. Grothaus did appear to diagnose Plaintiff with carpal tunnel syndrome in 2010. The mere diagnosis of a condition, however, says nothing about the extent to which such impairs a particular individual. *See, e.g., Hill v. Commissioner of Social Security*, 560 Fed. Appx. 547,

551 (6th Cir., Mar. 27, 2014) ("disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it"). Furthermore, even if the Court finds that the ALJ erred by failing to identify carpal tunnel syndrome as a severe impairment, the result is the same because the ALJ's RFC assessment, a matter on which Plaintiff bears the burden, is supported by substantial evidence.

In sum, Plaintiff has failed to persuade the Court that prior to the expiration of her insured status, she experienced carpal tunnel syndrome which imposed on her any limitations which are inconsistent with her RFC. Thus, even if it is assumed that the ALJ erred in failing to find that Plaintiff's carpal tunnel syndrome constituted a severe impairment, such does not call into question the substantiality of the evidence supporting the ALJ's decision. This argument is, therefore, rejected. *See Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (recognizing that the harmless error doctrine is intended to prevent reviewing courts from becoming "impregnable citadels of technicality"); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); *Berryhill v. Shalala*, 1993 WL 361792 at *7 (6th Cir., Sep. 16, 1993) ("the court will remand the case to the agency for further consideration only if 'the court is in substantial doubt whether the administrative

agency would have made the same ultimate finding with the erroneous finding removed from the picture...'").

### III.     Assistive Device

Lastly, Plaintiff argues that the ALJ erred by "failing to discuss the impact that an assistive device would have made on [Plaintiff's] ability to work."  As the evidence discussed above reveals, there was no evidence that Plaintiff, prior to the expiration of her insured status, required an assistive device.  Plaintiff exhibited "normal" gait, motor strength, and coordination and "intact" fine motor movement.  Moreover, Plaintiff's care providers did not prescribe or instruct Plaintiff to use an assistive device.   Thus, the ALJ was not obligated to discuss the potential impact an assistive device might have made in this matter.  *See, e.g., Jones v. Commissioner*, 815 Fed. Appx. 926, 931 (6th Cir., June 3, 2020) (the ALJ did not err by failing to discuss the claimant's alleged need for a cane because the evidence failed to support a finding that a cane was medically necessary).  Accordingly, this argument is rejected.

### CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                    Respectfully submitted,

Date: May 15, 2023                           /s/ Phillip J. Green
                                                    PHILLIP J. GREEN
                                                    United States Magistrate Judge