UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA DURBIN,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Case No. 1:22-cv-270

Hon. Hala Y. Jarbou

## OPINION

In June 2010, Plaintiff Linda Durbin applied for Disability Insurance Benefits. (Benefits Application, ECF No. 7-5, PageID.143-144.) Her application was denied, and she requested a hearing before an Administrative Law Judge (ALJ) to review the denial. On May 11, 2012, ALJ Timothy Keller issued a decision finding that Plaintiff did not qualify for benefits. (2012 ALJ Decision, ECF No. 7-2, PageID.47-64.) The case was subsequently remanded by the United States District Court for the Southern District of Ohio. (2014 District Court Order, ECF No. 7-10, PageID.648-667.) On December 17, 2014, ALJ Keller again found that Plaintiff did not qualify for benefits. (2014 ALJ Decision, ECF No. 7-10, PageID.679-698.) The case was subsequently remanded by the Appeals Council. (2015 Appeals Council Order, ECF No. 7-10, PageID.701-703.) On September 21, 2016, ALJ Jeffrey Hartranft found that Plaintiff did not qualify for benefits. (2016 ALJ Decision, ECF No. 7-9, PageID.501-534.) The case was once again remanded by the Southern District of Ohio. (2020 District Court Order, ECF No. 7-19, PageID.1532-1562.) Finally, on December 29, 2021, ALJ Hartranft again found that plaintiff did not qualify for benefits. (2021 ALJ Order, ECF No. 7-17, PageID.1372-1402.)

Plaintiff now brings this civil action seeking judicial review of her application denial. (Compl., ECF No. 1.) On May 15, 2023, Magistrate Judge Phillip Green issued a Report and Recommendation (R&R) recommending that the Commissioner's decision be affirmed and that the Court deny Plaintiff's request for a remand (ECF No. 17). Before the Court are Plaintiff's objections to the R&R (ECF No. 18).

## I. FACTUAL BACKGROUND

In his 2021 decision, the ALJ evaluated Plaintiff's disability status based on the five-step process established by the regulations. *See* 20 C.F.R. § 404.1520(a)(4). At the first step, the ALJ found that Plaintiff was not performing substantial gainful work activity during the relevant time span and therefore could continue to step two.[1] (2021 ALJ Order, PageID.1375.) At the second step, the ALJ found that Plaintiff could continue to step three because she had several severe impairments: "status post left vestibular artery vascular event; degenerative changes and arthritis of the cervical, lumbar, and thoracic spine; right rotator cuff tear; left sensorineural hearing loss and tinnitus; T6 compression fracture; fibromyalgia; anxiety disorder; and adjustment disorder." (*Id.*) At the third step, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments" that would qualify her as disabled. (*Id.*, PageID.1376.) At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work. (*See id.*, PageID.1392.) At the fifth step, Plaintiff's disability status was determined by an evaluation of whether she could adjust to other work, based on her "residual functional capacity and [her] age, education, and work experience." 20 C.F.R. § 404.1520(a)(4)(v). The ALJ concluded Plaintiff did not qualify for benefits because "there were

---

[1] "In order to establish entitlement to disability insurance benefits, an individual must establish that [she] became 'disabled' prior to the expiration of [her] insured status." *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (citing 42 U.S.C. § 423(a) and (c)). The expiration of Plaintiff's insured status occurred in March 2013. (*See* 2021 ALJ Order, PageID.1375.)

jobs that existed in significant numbers in the national economy that [she] could have performed."

(2021 ALJ Order, PageID.1393.)

## II. LEGAL STANDARD

Under Rule 72 of the Federal Rules of Civil Procedure,

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

## III. ANALYSIS

"The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting that decision." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 224-25 (6th Cir. 2019). "If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings." *Williams v. Kijakazi*, 600 F. Supp. 3d 852, 857 (W.D. Tenn. 2022) (citing *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971)). "The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility." *Id.* (citing *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984)).

### A. First Objection: Treating Physician Rule

In her initial brief, Plaintiff argues that the ALJ did not give proper weight to the opinions of Dr. Theobald, Plaintiff's physician. (Pl.'s Br., ECF No. 14, PageID.1877-1881.) The magistrate judge concluded that the ALJ was justified in discounting Dr. Theobald's opinions because they were inconsistent with other evidence. (*See* R&R, ECF No. 17, PageID.1917-1925.) Plaintiff

3

objects that the ALJ's analysis of Dr. Theobald's opinions did not comply with the requirements of the relevant regulations, 20 C.F.R. § 404.1527.[2] (Pl.'s Obj. to R&R, ECF No. 18, PageID.1931-1932.)

The regulations specify how an ALJ should incorporate an opinion from a "treating source," a medical source with whom the claimant "has had . . . an ongoing treating relationship." 20 C.F.R. § 404.1527(a)(2). "Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record." *Boza v. Comm'r of Soc. Sec.*, No. 1:20-cv-301, 2021 WL 4236861, at *3 (W.D. Mich. Sept. 17, 2021) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2)). "[W]hen a treating source's medical opinion is not given controlling weight . . . the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors." *Stewart v. Comm'r of Soc. Sec.*, No. 1:18-cv-687, 2019 WL 1057336, at *3 (W.D. Mich. Mar. 6, 2019); *see also* 20 C.F.R. § 404.1527(c).

The ALJ found that Dr. Theobald's opinions "are entitled to light weight in assessing [Plaintiff]'s physical functional limitations, restrictions, and residual functional capacity," and "entitled to partial weight in assessing [Plaintiff]'s mental functional limitations, restrictions, and residual functional capacity." (2021 ALJ Order, PageID.1389-1390.) The ALJ did not give Dr. Theobald's opinions more weight because he found them to be "inconsistent with the totality of the evidence." (*Id.*) The ALJ extensively detailed the inconsistencies between Dr. Theobald's

---

[2] 20 C.F.R. § 404.1527 applies to claims filed before March 27, 2017, and Plaintiff's claim was filed in 2010.

opinions and the other evidence in the record, including various test results and Plaintiff's own admitted abilities. (*Id.*) For example, in evaluating Dr. Theobald's opinions about Plaintiff's residual functional capacity, the ALJ explained:

> These opinions are inconsistent with the totality of the evidence, as discussed above, which reflects that [Plaintiff] was repeatedly neurologically intact with normal or good balance, coordination, cranial nerves, motor, bulk, power, strength, tone, range of motion, pulses, reflexes, sensory, gait, and station. . . . that all straight leg raising test results were negative and normal. . . . that [Plaintiff] has full range of motion of her neck. . . . that [Plaintiff] has intact fine motor abilities and is able to fully make a fist. . . . that [Plaintiff] had negative and normal Phelan and Tinel sign and test results. . . . [and] that [Plaintiff] had negative and normal lumbar MRI results.

(*Id.*, PageID.1389 (citations omitted).)

Plaintiff objects that the ALJ did not evaluate or mention all of the factors that determine how much weight to give a non-controlling opinion. (Pl.'s Obj. to R&R, PageID.1931.) As noted earlier, consistency with the record is only one of the several factors an ALJ must evaluate. However, "[t]he ALJ need not perform an exhaustive, step-by-step analysis of each factor; [he] need only provide 'good reasons' for both [his] decision not to afford the physician's opinion controlling weight and for [his] ultimate weighing of the opinion." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

For example, in *Rottmann v. Commissioner of Social Security*, 817 F. App'x 192 (6th Cir. 2020), the Sixth Circuit held that an ALJ had "sufficiently explained why he was affording little weight to [plaintiff's treating physicians'] opinions" because "[w]hile the ALJ did not reference each factor, he did discuss the factor most important to this case, *i.e.*, the consistency (or lack thereof) of the doctors' opinions with the record as a whole." *Id.* at 195. Similarly, by detailing the many ways in which Dr. Theobald's opinions contradicted evidence in the record, the ALJ provided the "good reasons" required by the regulations. *See also Neumann v. Comm'r of Soc. Sec.*, No. 1:19-cv-816, 2020 WL 7350587, at *7 (W.D. Mich. Dec. 15, 2020) (holding that ALJ

5

had provided "sufficient explanation of the weight" given to treating physician's opinions because the ALJ found opinions "inconsistent not only with the medical record as a whole, but also with Plaintiff's self-reported activities"); *Dover v. Comm'r of Soc. Sec.*, No. 20-11883, 2021 WL 4205623, at *4 (E.D. Mich. May 27, 2021) (affirming ALJ decision because "[a]lthough the ALJ did not reference all six regulatory factors in evaluating the opinions of [the treating physicians], he detailed the opinions' inconsistency with and lack of support from the respective treaters' own records and the record as a whole"), *report and recommendation adopted*, No. 20-cv-11883, 2021 WL 3828592 (E.D. Mich. Aug. 27, 2021); *Francis v. Comm'r Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (holding that omitting analysis of treatment duration and frequency did not violate treating physician rule).

Furthermore, the Sixth Circuit has explained that "the treating-source rule is not 'a procrustean bed, requiring an arbitrary conformity at all times.'" *Francis*, 414 F. App'x at 805 (quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (per curiam)). Accordingly, a court should "excuse a decision's noncompliance with its provisions 'where [the decision] has met the goal of . . . the provision of the procedural safeguard of reasons—even though [it] has not complied with the terms of the regulation.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)) (alterations in original). Procedural errors should therefore be ignored "[s]o long as the decision 'permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion.'" *Id.* (quoting *Friend*, 375 F. App'x at 551).[3]

---

[3] The magistrate judge, citing out-of-circuit precedent, stated that "[w]hile the ALJ is not required to explicitly discuss each of" the factors listed in the regulation, "the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment." (R&R, PageID.1919.) This framing of the treating physician rule is arguably more demanding than the standard set out by the Sixth Circuit, as described above. However, the magistrate judge's application of the rule led to the correct conclusion.

Here, the ALJ's decision gives Plaintiff and the Court a clear understanding that the ALJ reduced the weight given to Dr. Theobald's opinions because they were inconsistent with substantial evidence on the record. Therefore, even if the ALJ made any procedural errors, they were harmless. *See id.* (holding that "any procedural error [was] harmless" because ALJ provided clear understanding of decision by "[n]oting [doctor]'s relationship with [plaintiff]" and "outlin[ing] the myriad ways in which the doctor's opinion conflicted with evidence in the record").[4]

To the extent that Plaintiff's objection also implicitly challenges the ALJ's substantive conclusion about how much weight to give Dr. Theobald's opinions, this argument fails as well. The ALJ's opinion points to extensive inconsistencies between Dr. Theobald's opinions and the record, indicating that substantial evidence supports the ALJ's conclusion to give Theobald's opinions only light or partial weight given all of the relevant factors. This Court must affirm a decision supported by substantial evidence "even . . . if substantial evidence would also have supported other findings." *Williams*, 600 F. Supp. 3d at 857.

Because the ALJ applied the proper legal standards in evaluating Dr. Theobald's opinion and had substantial evidence for his conclusion, the Court will deny Plaintiff's first objection.

**B. Second Objection: Medically Determinable Impairment**

Plaintiff also argues in her initial brief that the ALJ wrongly ignored her diagnosis of carpal tunnel syndrome in analyzing her residual functional capacity. (Pl.'s Br., PageID.1881-1883.) The magistrate judge concluded that substantial evidence supported the ALJ's finding that Plaintiff

---

[4] While the ALJ did not specifically refer to Dr. Theobald as a treating physician, he described Dr. Theobald as Plaintiff's "primary care physician," indicating an awareness of their relationship. (2021 ALJ Order, PageID.1389.)

7

did not have carpal tunnel syndrome. (R&R, PageID.1926-1927.) Plaintiff objects that the ALJ did not properly consider the evidence presented. (Pl.'s Obj. to R&R, PageID.1934.)[5]

In step two of the five-step process explained above, the ALJ "consider[s] the medical severity of [the claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). The ALJ found that Plaintiff had several severe impairments, and therefore could continue to the next step. (*See* 2021 ALJ Decision, PageID.1375.) However, the ALJ found that there was not objective evidence indicating Plaintiff had carpal tunnel syndrome. (*Id.*, PageID.1376.) Plaintiff contends that this finding was incorrect, and that the ALJ should have used information about Plaintiff's carpal tunnel when later evaluating Plaintiff's residual functional capacity. (*See* Pl.'s Obj. to R&R, PageID.1932-1934.)

The regulations explain that an "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.[6] Furthermore, "[a] physical . . . impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." *Id.* These regulations make it clear that "a mere diagnosis is insufficient to establish a medically determinable impairment." *Mardis v. Comm'r of Soc. Sec.*, No. 2:18-cv-337, 2019 WL 2223071, at *3 (S.D. Ohio May 23, 2019).

Here, the ALJ found that, "[r]egarding [Plaintiff]'s alleged (right carpal tunnel syndrome), the record contains no medical evidence to substantiate the impairment results from anatomical,

---

[5] Plaintiff also objects to the magistrate judge's conclusion that any incorrect finding as to Plaintiff's carpal tunnel diagnosis was harmless error. (*See* Pl.'s Obj. to R&R, PageID.1932-1933.) However, it is unnecessary to determine whether an incorrect finding would be harmless error because, as explained below, the ALJ's finding was not incorrect.

[6] Section 404.1508 applies to claims made before March 27, 2017. *Mardis v. Comm'r of Soc. Sec.*, No. 2:18-cv-337, 2019 WL 911087, at *3 n.2 (S.D. Ohio Feb. 25, 2019), *report and recommendation adopted*, No. 2:18-cv-337, 2019 WL 2223071 (S.D. Ohio May 23, 2019).

physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." (2021 ALJ Decision, PageID.1376.) Plaintiff objects that the ALJ's finding was contrary to the evidence. (Pl.'s Obj. to R&R, PageID.1934.)

The magistrate judge considered various items in the record that, according to Plaintiff, indicate the presence of carpal tunnel syndrome. (R&R, PageID.1926.) First, in March 2010, Dr. Grothaus diagnosed Plaintiff with carpal tunnel. (Dr. Grothaus Notes, ECF No. 7-15, PageID.1303-1306.) Second, in June 2011, Dr. Foad indicated in a letter that Plaintiff said she was previously diagnosed with carpal tunnel based on an EMG. (6/14/2011 Letter from Dr. Foad, ECF No. 7-8, PageID.450.) Third, Dr. Foad wrote in February 2012 that Plaintiff "may have carpal tunnel syndrome," and noted the same thing three months later. (2/28/2012 Dr. Foad Notes, ECF No. 7-14, PageID.907; Dr. Foad 5/14/2012 Notes, ECF No. 7-14, PageID.905.)

Despite Plaintiff's contentions, this evidence is not enough to establish a medically determinable impairment. Dr. Grothaus's diagnosis, absent any associated medical evidence, cannot by itself establish that Plaintiff has carpal tunnel.[7] *See Mardis*, 2019 WL 2223071 at *3 (S.D. Ohio May 23, 2019). Dr. Foad's statement that Plaintiff *might* have carpal tunnel is insufficient, and the fact that Plaintiff told Dr. Foad about an EMG is not medical evidence. In fact, Dr. Foad found "[n]o objective evidence for carpal tunnel syndrome" in November 2011. (11/29/2011 Dr. Foad Notes, ECF No. 7-8, PageID.447.) In February 2012, Dr. Foad noted that Plaintiff may have carpal tunnel syndrome but also acknowledged, again, that there was "[n]o

---

[7] As the magistrate judge noted, Dr. Grothaus's notes do not clearly contain any medical evidence supporting his diagnosis. (*See* Dr. Grothaus Notes, PageID.1303-1306.) The notes describe Plaintiff reported pain, but a claimant's statement of symptoms are not sufficient to establish impairment. 20 C.F.R. § 404.1508; *see Compton v. Berryhill*, No. 1:17-cv-146, 2018 WL 3636541, at *4 (E.D. Tenn. July 31, 2018) (holding that diagnosis supported only by plaintiff's subjective reports does not qualify as objective evidence). The notes also mention an EMG, but it appears that Plaintiff told Dr. Grothaus that she had an EMG, not that Grothaus conducted one, and Grothaus does not refer to any findings from that EMG. (*See* Dr. Grothaus Notes, PageID.1303-1306.)

9

objective evidence of carpal tunnel." (2/28/2012 Dr. Foad Notes, PageID.907.) The ALJ's citations to Dr. Grothaus's diagnosis, Dr. Foad's notes, and Dr. Foad's letter indicate that the ALJ properly considered the evidence Plaintiff presented but simply found it insufficient. (*See* 2021 ALJ Decision, PageID.1376.)

A "[p]laintiff bears the burden of proving the existence of a medically determinable impairment." *Rosshirt v. Comm'r of Soc. Sec.*, No. 2:19-cv-3280, 2020 WL 4592393, at *2 (S.D. Ohio Aug. 11, 2020) (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)). As Plaintiff has not met that burden, the Court will not reverse the ALJ's decision. *See also McCluskey v. Comm'r of Soc. Sec.*, No. 1:12–cv–617, 2013 WL 3776573, at *3-4 (S.D. Ohio July 17, 2013) (holding that ALJ did not err in finding plaintiff lacked medically determinable impairment because "plaintiff has not cited to any objective or clinical tests to support" diagnosis), *report and recommendation adopted*, *McCluskey v. Acting Comm'r of Soc. Sec.*, No. 1:12–cv–617, 2013 WL 4080725 (S.D. Ohio Aug. 13, 2013); *Mardis*, 2019 WL 2223071 at *2-3 (S.D. Ohio May 23, 2019) (holding that ALJ did not err in finding plaintiff lacked medically determinable impairment because doctor who diagnosed her provided "no reasoned, clinical discussion of how these conditions were diagnosed or supported by medical examination observations, laboratory results or other objective tests, and expresse[d] no opinion or explanation as to how these conditions would impact plaintiff's ability to perform work-related tasks"); *Bryan v. Comm'r of Soc. Sec.*, No. 2:18-cv-554, 2019 WL 2912089, at *2 (S.D. Ohio July 8, 2019) (explaining that "the mere listing of diagnoses in the past history section of a treatment record does not prove that these diagnoses" are medically determinable impairments).

Because substantial evidence supports the ALJ's finding that Plaintiff does not have carpal tunnel syndrome, the Court will deny Plaintiff's second objection.

## IV. CONCLUSION

For the reasons stated above, the Court will deny Plaintiff's objections and affirm the Commissioner's decision. The Court will enter an order and judgment in accordance with this Opinion.

Dated: July 20, 2023                          /s/ Hala Y. Jarbou
                                              HALA Y. JARBOU
                                              CHIEF UNITED STATES DISTRICT JUDGE